UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROGER THOMAS,

                Petitioner,

   - against -

DONALD G. UHLER,[1]

                Respondent.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**22 CV 3527 (RPK) (LB)**

**BLOOM, United States Magistrate Judge:**

      Petitioner, Roger Thomas, files this *pro se* petition for a writ of habeas corpus ("the petition") pursuant to 28 U.S.C. § 2254 challenging his 2018 New York Supreme Court, Kings County, conviction of Manslaughter in the First Degree. Pet., ECF No. 1 at 1.[2] The Honorable Rachel P. Kovner referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

**BACKGROUND**

    **I.**    **The Underlying Crimes**

      According to the evidence adduced at trial,[3] on June 29, 2011, shortly after 10:00 p.m., Luis Luna ("Luis") was shot and killed while sitting on a stoop on Lincoln Avenue, near the intersection of Lincoln Avenue and Liberty Avenue, in Brooklyn, New York. Trial Tr., ECF No. 13-7 at 662, 760-62, 783, 785. Luis had been sitting on the stoop with friends from the

---

[1] The Clerk of Court is directed to amend the caption as set forth in this Report. See Order dated Oct. 28, 2022 (directing the Clerk of Court to amend the caption because "the correct respondent is Donald G. Uhler, the Superintendent of the Upstate Correctional Facility").

[2] For ease of reference, all citations are to the ECF pagination of the state court record and the parties' briefs.

[3] Petitioner was tried by jury in New York Supreme Court, Kings County, from August 16, 2018 to August 29, 2018, before the Honorable Danny Chun. Trial Tr., ECF No. 13-7. The trial transcript begins at ECF No. 13-7, page 159 and concludes on page 1068.

1

neighborhood, including Awilda Arroyo,[4] Tony Corona and Genara Serrano,[5] who had gone back into her apartment approximately 20 minutes prior to the shooting. Id. at 654-56, 756-57, 790-91. Tony Corona saw petitioner[6] approach the gate in front of the stoop, look at the people sitting with him on the stoop, walk a couple of steps away, and then return to the gate and start shooting. Id. at 785-88. Awilda Arroyo ducked and ran away when she heard the shots, glanced back, and saw petitioner with a gun. Id. at 760. Luis sustained three gunshot wounds: one to the lower back, one to the knee, and a fatal gunshot to his chest. Id. at 722-25.

A New York Police Department (N.Y.P.D.) camera on the corner of Lincoln Avenue and Liberty Avenue from around the time of the shooting captured two men walking towards the scene of the shooting and then running away shortly after. Id. at 621, 660, 796-97. Genara Serrano and Tony Corona identified petitioner as one of the men in the video. Id. at 660, 796-97. Two 911 calls regarding the shooting, one from 10:07 p.m. and one from 10:10 p.m., were played for the jury.[7] Id. at 707-09. The N.Y.P.D. Crime Scene Unit searched the area and collected a blood sample where Luis collapsed. Id. at 876. No ballistic evidence was found. Id. at 875.

Earlier that evening, at around 7:00 p.m. or 8:00 p.m., Kemar Daley[8] saw petitioner in the neighborhood near a barbershop at Lincoln Avenue and Liberty Avenue and testified that petitioner was looking at him in "a jealous way." Id. at 915-17, 941. Kemar Daley and Genara Serrano had dated until a month prior to the shooting,[9] and Genara Serrano started dating petitioner approximately two weeks after her relationship with Kemar Daley ended to make him jealous. Id.

---

[4] The trial transcript also refers to Awilda Arroyo by her nickname "Minnie." See Trial Tr. at 759.
[5] The trial transcript also refers to Genara Serrano by her nickname "Lee." See Trial Tr. at 652.
[6] The trial transcript also refers to petitioner by his nicknames "E" and "E-Villain." See Trial Tr. at 577, 653.
[7] The calls are not transcribed in the trial transcript.
[8] The trial transcript also refers to Kemar Daley by his nickname "Shotta" and the phonetic spelling "Shada." See Trial Tr. at 652, 914.
[9] Kemar Daley testified that he and Genara Serrano dated for approximately two years. See Trial Tr. at 912. Genara Serrano testified that she and Kemar Daley dated for approximately six months. Id. at 652-53, 664-65.

2

at 652-53, 664-65. When Kemar Daley saw petitioner, Kemar Daley testified that he told petitioner, referring to Genara Serrano, "That's not my wife. Go ahead, do what you doing. That is not my wife. You could go ahead and do what you do." Id. at 916. Petitioner seemed "a little bit mad" and walked off. Id. at 917. After this conversation with petitioner, Kemar Daley ran into Luis and told Luis to go to Luis's brother because Kemar Daley was concerned about his conversation with petitioner, but Luis stayed with his friends on Lincoln Avenue. Id. at 917-18.

Following the shooting, Luis was taken to Brookdale Hospital. Id. at 531. Jose Luna, Luis's older brother, was called and went to the hospital from his home in Suffolk County. Id. at 573-74. At the hospital, Jose Luna saw Awilda Arroyo and was informed by a doctor that his brother had died. Id. Jose Luna then borrowed a motorcycle from a friend and went to Lincoln Avenue and Liberty Avenue. Id. at 575. Based on conversations with Awilda Arroyo and with people at Lincoln Avenue and Liberty Avenue, Jose Luna went to look for petitioner. Id. at 575-76. During his search, Jose Luna came across Kemar Daley, who got onto the back of Jose Luna's motorcycle and the pair drove around looking for petitioner. Id. at 577-78. Officer Wilmer Hernandez and other N.Y.P.D. officers had been canvassing the neighborhood after the shooting and saw a man on a motorcycle driving around the neighborhood. Id. at 828. Jose Luna spoke to one of the officers and identified himself as the brother of the shooting victim. Id. Officer Hernandez continued to watch Jose Luna. Id.

At around the same time, Genara Serrano was walking back from a store in the neighborhood when she was approached by petitioner who asked her to walk with him. Id. at 657-58. Genara Serrano asked petitioner if he shot Luis; petitioner replied, "yes, because Luis was air hustling," meaning "being nosy." Id. at 658. As Genara Serrano and petitioner were walking, Jose Luna and Kemar Daley rode by on a motorcycle and stopped. Id. at 578-79, 659. Petitioner and

3

Genara Serrano each ran a separate way. Id. Kemar Daley then caught up to Genara, grabbed her, and hit her.[10] Id. at 666. Luis pursued petitioner and flagged down Police Officer Jeremy Bloom to report petitioner's whereabouts. Id. at 533, 579-80. Officer Bloom and Officer Hernandez and their partners pursued petitioner. Id. at 533-34, 830. When Jose Luna saw petitioner run, he jumped on his motorcycle to follow petitioner and called to the officers. Id. at 533-34, 580-81, 830-31. Jose Luna chased petitioner on his motorcycle. Id. at 581-82. Just before reaching a large intersection, Jose Luna collided with petitioner. Id. at 582-83. Jose Luna got off of his motorcycle and held petitioner until police arrived. Id. at 583. When police caught up to Jose Luna, he identified petitioner as the person who shot his brother. Id. at 535. The officers placed petitioner in handcuffs, saw that he was unconscious, and called an ambulance which took petitioner to Brookdale Hospital. Id. at 534-36, 623. Petitioner remained in the hospital under police guard until July 2, 2011 when he was transported to the 75th Precinct. Id. at 623-25.

## II.     Procedural History

Petitioner's first trial by jury was in New York Supreme Court, Kings County, from September 19, 2013 to October 1, 2013, before the Honorable Albert Tomei. ECF 13-1, 13-2, 13-4, 13-5, and 13-6. Petitioner was found guilty of murder in the second degree and was sentenced to twenty-five years to life. ECF 13-6 at 155, 169. Petitioner appealed his conviction to the New York State Appellate Division, Second Department, and on October 19, 2016, the Appellate Court reversed the conviction and ordered a new trial. People v. Thomas, 143 A.D.3d 923 (2d Dep't 2016). The Court found that although "the defendant's conviction was supported by legally

---

[10] Kemar Daley testified that he never hit Genara Serrano. See Trial Tr. at 937.

sufficient evidence, . . . a new trial is warranted as a result of two evidentiary errors, both of which were compounded by improper remarks made during the People's summation."[11] Id. at 923.

Petitioner was retried by jury in New York Supreme Court, King's County, from August 16, 2018 to August 29, 2018, before the Honorable Danny Chun. See Trial Tr. The prosecution called many witnesses, including Tony Corona who identified petitioner as the shooter, Awilda Arroyo who saw petitioner with a gun immediately following the shooting, and Genara Serrano who testified that petitioner said he shot Luis because Luis was "air hustling." Id. at 658, 758, 785-88. The prosecution introduced two 911 calls from the shooting, one at 10:07 p.m. and the other at 10:10 p.m. Id. at 709.

During the Pre-Charge Conference, the Court asked petitioner's counsel whether he was asking for the lesser included offense of manslaughter in the first degree, and petitioner's counsel replied no. Id. at 948. When the prosecutor requested the lesser included offense of manslaughter in the first degree, the Court said that it would give the lesser included offense in the alternative. Id. at 949. Petitioner's counsel argued that there is no justification for this lesser included offense because the petitioner either "shot him intentionally or he didn't." Id. The Court replied,

> In a case where three shots are fired and it's not at point blank range, meaning the gun is not at contact distance, I would have basically – I would have to, if the defense requested, give such a charge in the alternative. And I think it cuts both ways. So if the people ask for it, I believe there is a reasonable view of the evidence that a juror could find that the defendant meant to seriously injure but not necessarily kill the victim so I will give it. And I note defense's objection and exception.

---

[11] The Supreme Court, Appellate Division found that the prosecutor impeached one of her own witnesses by reading that witness's prior grand jury testimony. At trial, the witness stated that it was dark at the time of the shooting so she could not see the shooter, whereas in her grand jury testimony she stated that she recognized the shooter as petitioner. Furthermore, the prosecutor improperly used the inconsistent statement in her summation. In addition, the Court found that the trial court erred in permitting double hearsay by permitting another witness to testify that a "little girl said that [the defendant] shot [the victim]" and the prosecutor used and misinterpreted that hearsay testimony in her summation. Thomas, 143 A.D.3d at 923-24.

5

Id. at 950. The Court charged the jury regarding murder in the second degree with the alternative of manslaughter in the first degree and criminal possession of a weapon in the second degree.[12] Id. at 1031-33. The prosecutor referenced the 10:10 p.m. 911 call during her summation. Id. at 993-95. Petitioner's counsel objected to the prosecutor's characterization of the call several times. Id. The Court overruled these objections. Id.

In his instructions to the jury, the judge emphasized that "[y]ou and you alone are the sole and exclusive judges of the facts in this case," "[a]lways go by what your recollection is, not by what counsels say," and "[closing] arguments are not evidence." Id. at 957-58, 1012

The jury found petitioner guilty of manslaughter in the first degree. Id. at 1066. Petitioner was sentenced to 25 years imprisonment and five years post-release supervision.[13] Resp't Aff. & Mem. of Law, ECF No. 13 ¶ 33.

Petitioner appealed his conviction to the New York State Appellate Division, Second Department, and raised four grounds: (1) petitioner was deprived of effective representation when his attorney failed to object to the submission of first-degree manslaughter as a letter-included offense as the charge was time-barred;[14] (2) the court erred in submitting first-degree manslaughter to the jury because no reasonable view of the evidence supported the charge; (3) the prosecutor's summation misconduct deprived appellant of a fair trial;[15] and (4) the 25-year sentence of imprisonment, the maximum for manslaughter, was harsh and excessive. Pet'r App. Div. Br., ECF No 13-8 at 3.

---

[12] In the first trial, the charges presented to the jury were murder in the second degree and criminal possession of a weapon in the second degree. ECF 13-6 at 141.

[13] The sentencing transcript is not part of the state record.

[14] Specifically, petitioner argued on appeal that the first-degree manslaughter charge was time-barred as the 5-year statute of limitations had passed by the time the charge was submitted to the jury, and petitioner's counsel objected to the jury considering this count for other reasons, demonstrating that there was no strategic basis for this oversight.

[15] Petitioner asserted that the prosecutor's summation improperly included a baseless claim that a 911 caller, who said that she was present during the incident and who identified someone other than appellant as the shooter, was not an eyewitness, as well as sheer speculation as to motive and identification.

The Appellate Division, Second Department, affirmed the conviction on December 15, 2021. People v. Thomas, 200 A.D.3d 912 (2d Dep't 2021). The Court found that (1) petitioner's ineffective assistance of counsel claim was without merit since the manslaughter charge was not time-barred and the motion would have therefore had little chance of success; (2) there "was a reasonable view of the evidence that the defendant intended to cause serious injury as opposed to death;" (3) the challenge to the prosecutor's remarks was partially unpreserved for appellate review and any remarks that were improper were mitigated by the jury instructions and "were not so flagrant or pervasive as to deprive the defendant of a fair trial;" and (4) petitioner's sentence was not excessive. Id. at 913-14. Petitioner's leave application to the New York Court of Appeals was denied. People v. Thomas, 38 N.Y.3d 931 (2022).

Petitioner timely filed the instant *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. Petitioner challenges his conviction on the same grounds that he raised on direct appeal.[16]

## DISCUSSION

### I.     Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody

---

[16] Petitioner included a fifth ground in his petition: "Petitioner has claimed that his right to confront witness against him was violated because the autopsy report contained statements made by a non-testifying declaring (sic) and the statements were inadmissible hearsay. Defendant was denied his right to effective assistance of trial counsel because trial counsel failed to object to cure or preserve the introduction of the autopsy reports was testimonial hearsay under the Sixth Amendment." Pet. at 12. This fifth ground was included in petitioner's § 440.10 motion, which was unexhausted at the time the instant petition was filed.

On August 17, 2022, the Court granted petitioner's motion to withdraw the unexhausted fifth claim for relief so his petition could move forward. See Order dated Aug. 17, 2022. More than a year later, petitioner filed a series of brief letters apparently related to this withdrawn unexhausted claim, ECF Nos. 22-25, with the most recent letter asking the Court to "hold" his habeas petition in "abeyance until I see what the Court of Appeals says." ECF No. 25. As petitioner withdrew his unexhausted fifth claim, this request should be denied.

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits in State court proceedings" and the state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet'. . . and 'highly deferential standard[,]'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fisher, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original); see also Grayson v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree

8

that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II. Petitioner's Claims

Petitioner raises four claims, two of which are not cognizable on habeas review.

### 1. Ineffective Assistance of Counsel Claim

Petitioner claims that he received ineffective assistance of counsel when his attorney failed to object to the submission of first-degree manslaughter as a lesser included offense for murder in the second degree on the grounds that it was time barred. Pet., ECF No. 1 at 5-6. Petitioner claims that the five-year statute of limitations had passed, and although counsel objected to the jury considering this count for other reasons, counsel's failure to object based on the statute of limitations reflects that there was no strategic basis for this oversight. Id. at 5. Respondent argues that "the Appellate Division correctly concluded [that] the manslaughter count was not, in fact, barred by the statute of limitations, and accordingly, counsel could not be faulted for failing to move to dismiss that count on that ground." Resp't Aff. & Mem. of Law, ECF No. 13 at 18.

To establish a claim of ineffective assistance of counsel, petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) petitioner suffered prejudice as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "The [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The combined deferential standards of review under AEDPA and Strickland create a "doubly" deferential standard of review of ineffective assistance of counsel claims raised by habeas petitioners. See Harrington, 562 U.S. at 105. In applying the Strickland standard, generally,

9

"counsel's overall performance throughout the case" should be reviewed "to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

Petitioner's claim fails both prongs of the Strickland test. First, petitioner fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-88. The Appellate Division held that "[c]ontrary to the defendant's contention, the manslaughter prosecution was not time-barred. The original accusatory instrument charging him with murder in the second degree was filed in 2011, while the lesser included offense of manslaughter in the first degree remained timely." Thomas, 200 A.D.3d at 913. "[T]rial counsel's failure to raise a meritless objection . . . cannot, as a matter of law, constitute ineffective assistance of counsel." Aller v. Lape, No. 09-CV-1192, 2011 WL 1827443, at *5 (E.D.N.Y. May 12, 2011); see also Black v. Rock, 103 F. Supp. 3d 305, 322 (E.D.N.Y. 2015) (holding "state courts' denial of Petitioner's ineffective assistance of counsel claim . . . was not contrary to, or an unreasonable application of, clearly established federal law because, as a matter of state procedural law" the potential motion at issue, if made by trial counsel, "would have been denied as meritless").[17] Because petitioner's underlying statute of limitations claim was found to be without merit, his counsel's failure to raise that claim did not fall below an objective standard of reasonableness. Petitioner therefore fails to satisfy the first prong of the Strickland test.

For essentially the same reason, petitioner also fails to demonstrate that there is a reasonable probability that but for his counsel's lack of objection, the trial court would not have given the jury the manslaughter charge as a lesser included offense. The Appellate Division held that "[t]rial counsel cannot be deemed ineffective for failing to make an objection or motion that

---

[17] The Clerk of Court is respectfully directed to send petitioner the attached copies of all the unreported cases cited herein.

10

would have little chance of success." Thomas, 200 A.D.3d at 913. "Counsel's errors must be 'so serious as to deprive defendant of a fair trial, a trial whose result is reliable.'" Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 687). Petitioner does not show that he suffered prejudice as a result of his counsel's alleged deficient performance given the underlying objection was deemed meritless. Therefore, petitioner's claim fails to satisfy the second prong of the Strickland test.

In sum, petitioner fails to establish that his counsel's performance was ineffective under the highly deferential Strickland standard. See Harrington, 562 U.S. at 105 (citing Strickland, 466 U.S. at 690) (noting that the question in Strickland inquiry is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") Petitioner's ineffective assistance of counsel claim should be denied as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

### 2. Prosecutor's Summation Misconduct Claim

Petitioner claims that comments made by the prosecutor during summation deprived him of a fair trial. Pet. at 9. These comments include the prosecutor's explanation of the motive for the shooting, which the petitioner contends was speculative, as well as the location of a 911 caller and the reasons that a 911 caller identified someone other than petitioner as the shooter. Id. Respondent argues that "none of the summation comments about which defendant complains deprived defendant of a fair trial."[18] Resp't Aff. & Mem. of Law at 30. This Court agrees.

To grant relief, the Court must find that "the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

---

[18] The Appellate Division found that this claim was "partially unpreserved for appellate review." Thomas, 200 A.D.3d at 913.

Petitioner must show that "the evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury." Tankleff v. Senkowski, 135 F.3d 235, 253 (2d Cir. 1998). "In determining whether [a prosecutor's] misconduct amounted to substantial prejudice, [courts] examine the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Bradley v. Meachum, 918 F.2d 338, 343 (2d Cir. 1990) (quotations and citation omitted).

Petitioner claims that "[o]n several occasions during her summation, the prosecutor portrayed as facts what amounted to mere speculation about the motive for the shooting and reasons that a 911 caller had identified Kemar Daley as the perpetrator." Pet. at 9. However, comments that are short, fleeting, and isolated are "much less likely to have had a substantial effect on the jury's verdict." Tankleff, 135 F.3d at 253. Even if the prosecutor's comments on summation were improper, they must be egregious in order to undermine the certainty of the conviction. Bradley, 918 F.2d at 343. Cf. Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (finding that "repeated and escalating prosecutorial misconduct from initial to closing summation" rather than "one, or a few isolated, brief episodes" constituted egregious misconduct).

Before and after summations, the Court instructed the jury that "nothing that counsels say in their summations is evidence in this case," stressing to "[a]lways go by what your recollection is, not by what counsels say," and finally emphasizing that "[closing] arguments are not evidence." Trial Tr. at 957-58, 1012. The Appellate Division held that "[t]o the extent that some of the prosecutor's remarks were improper, any prejudicial effect was ameliorated by the Supreme Court's instructions to the jury, and those remarks were not so flagrant or pervasive as to deprive the defendant of a fair trial." Thomas, 200 A.D.3d at 913 (internal citation omitted). "A limiting instruction by the judge during the jury charge can cure the prosecutorial misconduct." Osorio v.

12

Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (finding "trial court mitigated any prejudice" caused by prosecutor's statements during summation by instructing jury that lawyers' statements are not evidence and could be disregarded in light of the evidence); see also Jackson v. Conway, 763 F.3d 115, 150 (2d Cir. 2014) (finding that trial court's reminder to the "jury that statements made by the attorneys in summation were not evidence and that the jurors were to draw their own conclusions from the facts, rather than rely on those supplied by counsel . . . further reduc[ed] the potential for prejudice"); Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) ("[A]s a balance, the trial court took curative action . . . [including] instruct[ing] the jury that the summations were not evidence and that the jury was the sole judge of the facts.").

Petitioner fails to show that "he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). Respondent argues that "the evidence of defendant's guilt was overwhelming" given the eyewitness who identified petitioner, petitioner admitting to a witness that he was the shooter, and an eyewitness who saw petitioner holding a gun immediately following the shooting. Resp't Aff. & Mem. of Law at 28-29. This was not "a case in which the evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury." Tankleff, 135 F.3d at 253.

The Appellate Division ruled that "many of the challenged remarks were fair comment on the evidence, and responsive to defense counsel's summation" and, to the extent any were improper, the prejudicial effect was mitigated and the comments did not deprive defendant of a fair trial. Thomas, 200 A.D.3d at 914. Petitioner's claim regarding the prosecutor's comments should be denied as petitioner fails to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established Federal law.

### III.    Claims Not Cognizable on Habeas Review

#### 1. Lesser-Included Offense Claim

Petitioner claims that the trial court erred in submitting a first degree manslaughter charge to the jury as a lesser-included offense because in petitioner's view "no reasonable view of the evience (sic) permitted the jury to conclude that [petitioner] intended to cause serious physical injury to, rather than kill, the victim." Pet., ECF No. 1 at 7. The Appellate Division found that the charge was proper since "there was a reasonable view of the evidence that the defendant intended to cause serious physical injury as opposed to death." Thomas, 200 A.D. 3d at 913-14.

Respondent asserts that this claim is not cognizable on habeas review. Resp't Aff. & Mem. of Law at 22. This Court agrees.[19] "Petitioner's . . . claim of error—that the trial court erred by charging an improper lesser-included offense—does not state a claim for federal habeas relief." Tavarez v. Larkin, No. 12-CV-4015, 2014 WL 2048419, at *12 (E.D.N.Y. May 18, 2014), aff'd, Tavarez v. Larkin, 814 F.3d 644 (2d Cir. 2016). "The Supreme Court has not ruled upon whether it is a violation of the Constitution or federal law for a trial court to instruct the jury on a lesser-included offense, in a non-capital case, if such an instruction is improper." Nesmith v. Bradt, No. 08-CV-6546, 2009 WL 3189346, at *3 (S.D.N.Y. Oct. 5, 2009), report and recommendation adopted, 2010 WL 447067 (S.D.N.Y. Feb. 9, 2010).

Petitioner's claim regarding the lesser-included offense charge should therefore be dismissed as it is not cognizable on habeas review.

---

[19] The Supreme Court held that a trial court must instruct the jury on lesser-included offenses in a capital case "if the evidence warrants such a charge." Bien v. Smith, 546 F.Supp.2d 26, 43 (E.D.N.Y. 2008) (citing Beck v. Alabama, 477 U.S. 625, 637-638 (1980)). The Second Circuit noted, however, that "[n]either the Supreme Court nor this circuit has decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition." Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995).

### 2. Excessive Sentence Claim

Petitioner was found guilty of manslaughter in the first degree and was sentenced to 25 years with 5 years post-release supervision. Resp't Aff. & Mem. of Law, ECF 13 ¶ 33. Petitioner claims that the imposition of the maximum sentence was harsh and excessive due to his age at the time of the sentencing. Pet. at 11. The Appellate Division held that "[t]he sentence imposed was not excessive." Thomas, 200 A.D.3d at 914. An excessive sentence claim is not cognizable on federal habeas review where the imposed sentence falls within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." Id.; see also Cardova v. Lavalley, 123 F. Supp.3d 387, 398 (E.D.N.Y. 2015) ("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.") (quotation and citation omitted)).

Manslaughter in the first degree is a Class B Felony under New York Penal Law § 125.20, punishable by up to twenty-five years in prison.[20] Petitioner's sentence falls within the statutory guidelines under New York Penal Law. Therefore, petitioner's excessive sentence claim should be dismissed as it is not cognizable on habeas review.

### CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should issue. 28

---

[20] As respondent did not provide petitioner's sentencing transcript with the record, it is not clear under which provision of New York Penal Law petitioner was sentenced. Regardless, a maximum determinate sentence of imprisonment of twenty-five years is authorized by New York Penal Law for a Class B felony. See New York Penal Law § 70.02(3)(a); § 70.04(3)(a).

U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-260 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purpose of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadows Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

                                                                                  /S/
                                                  LOIS BLOOM
                                                  United States Magistrate Judge

Dated: November 3, 2023
       Brooklyn, New York